OPINION OF THE COURT
Julius Vinik, J.
In this CPLR article 78 proceeding, petitioner, a pharmacy, seeks an order: (1) annulling the determination by respondents dated July 29, 1988, which denied petitioner’s application for reenrollment into the Medicaid program, and (2) directing respondents to reinstate it as an authorized Medicaid provider. Respondents cross-move for dismissal of the petition.
On October 5, 1987, petitioner, which had been a Medicaid provider for 10 years, was advised by respondents that pursuant to 18 NYCRR 504.10 (eff Jan. 5, 1987), all providers enrolled in the Medicaid program were required to submit a reenrollment application in order to continue participation in said program. On December 2, 1987, petitioner timely submitted said application. However, by letter dated April 1, 1988, respondents notified petitioner that they had decided not to reenroll it in the Medicaid program but to terminate it from said program. The basis for respondents’ determination was that during an on-site inspection conducted on September 30, 1987 in which inspectors selected 10 or more prescriptions for review, Education Law violations and Medicaid billing violations were observed. Specifically, the violations alleged to have been found were that: (1) two unlicensed clerks were supervised by one pharmacist in violation of 8 NYCRR 29.7 (a) (22) (ii) (a), (2) the amounts ordered and dispensed were not indicated on two prescriptions in violation of 8 NYCRR 29.7 (a) (1), (3) the brand name of a prescription which was to be filled genetically was billed to Medicaid, (4) the amount of a prescription was reduced by petitioner, and (5) petitioner, in the case of five prescriptions, billed Medicaid for larger amounts than prescribed.
The letter informed petitioner that if it believed the denial of its application was based upon a mistake of fact, it could appeal respondents’ determination by submitting written arguments and documentation concerning the mistake of fact within 30 days. Petitioner filed a written appeal; however, on July 29, 1988, respondents affirmed their denial of the application, stating that petitioner had not controverted the reason *466 for the denial nor had it shown that the denial was based upon a mistake of fact. Consequently, petitioner commenced the instant action.
In support of the petition, petitioner contends, inter alia, that it was entitled to a hearing before termination of its Medicaid provider status, and that the failure of respondents to provide it with such a hearing violated the law controlling provider contracts (18 NYCRR part 501 et seq.) and deprived it of its constitutional right to due process.
In opposition to the petition and in support of their motion to dismiss the petition, respondents contend that the reenrollment application was denied pursuant to 18 NYCRR 504.5. This section, entitled "Denial of an application”, sets forth in 14 paragraphs ([a] [1]-[14]) various factors to be considered "[i]n determining whether to enter into a contract with an applicant”. Respondents do not assert which of these subdivisions petitioner is alleged to have violated. However, respondents rely on subdivision (e) of this section as authority for their contention that petitioner was not entitled to a hearing, but, rather, was limited to the right of a paper review. Said subdivision provides, inter alia, that "[if] an application is denied, the applicant may appeal the denial by filing a written request for reconsideration with the department within 60 days of the date of the notice of denial.” (18 NYCRR 504.5 [e] [1].) Such a request "must include all information which the applicant wishes to be considered in the reconsideration, including any documentation or arguments which would controvert the reason for the denial or disclose that the denial was based upon a mistake of fact.” (18 NYCRR 504.5 [e] [2].)
The court notes, however, that section 504.5 (e) was not enacted until June of 1988, two months subsequent to the initial departmental denial of petitioner’s reenrollment. While respondents argue that they allowed petitioner to use a similar procedure (although the procedure made available to petitioner limited its time to appeal to 30 days rather than 60 days and restricted the grounds on which it could base its appeal to mistakes of fact), in fact, the sole regulation providing for review of respondents’ determination at the time petitioner’s application was denied, was 18 NYCRR 504.7 (b).
18 NYCRR 504.7, entitled "Continued enrollment termination”, provides in subdivision (b) that: "[a] provider’s participation in the program may be terminated, suspended or restricted for a reasonable period of time if the department finds *467 that the provider has engaged in an unacceptable practice as set forth in Part 515 of this Title. A provider whose participation is so terminated, suspended or restricted is entitled to notice and an opportunity to be heard in accordance with Part 515 of this Title” (emphasis supplied).
Section 515.2 defines an unacceptable practice as "conduct by a provider which contravenes the policies, standards or procedures of any New York State or Federal statute or regulation” (18 NYCRR 515.2 [a]). Section 515.2 also provides specific examples of "unacceptable practices” including, inter alia, "submitting or causing to be submitted to the medical assistance program bills or requests for payment containing charges or costs that are substantially in excess of customary charges or costs” (18 NYCRR 515.2 [b] [21]). Thus, the deficiencies which petitioner was charged with in the letter of April 1, 1988 and for which its provider status was terminated, fall squarely within the definition of unacceptable practices. Pursuant to section 515.8: "[a] provider has the right to a hearing to review a determination that the provider has engaged in an unacceptable practice or has received overpayments”.
The question before this court, then, is whether a provider which, upon its reenrollment application, is charged with conduct constituting an unacceptable practice may be terminated pursuant to section 504.5 only, and without resort to section 504.7 (b), thereby circumventing the provider’s right to a hearing pursuant to section 515.8. While the Appellate Division has not yet addressed this issue, lower courts have confronted this precise issue. There is, however, a split of authority on this issue with some decisions holding that such a provider may be terminated pursuant to section 504.5 without a hearing (see, e.g., G&S Pharmacy v Perales, Sup Ct, Kings County, Nov. 7, 1988, Lodato, J., index No. 18066/88; Holder v Perales, Sup Ct, NY County, Oct. 24, 1988, Shainswit, J., index No. 15058/88; Barata v Perales, Sup Ct, NY County, Aug. 29, 1988, McCooe, J., index No. 16097/88) and other decisions holding that such a provider must be afforded an evidentiary hearing pursuant to part 515 (see, e.g., Levinson v Perales, NYLJ, Mar. 27, 1989, at 27, col 3 [Sup Ct, Kings County, Ramirez, J.]; Winyard v Perales, NYLJ, Mar. 2, 1989, at 23, col 4 [Sup Ct, NY County, Baer, J.]; Matter of Aziz [Perales], NYLJ, Dec. 28, 1988, at 21, col 6 [Sup Ct, NY County, Cohen, J.]; Kothari v Perales, Sup Ct, Kings County, Nov. 28, 1988, Held, J., index No. 18038/88).
The courts which have held that providers whose applica *468 tions for reenrollment under section 504.10 were denied based on conduct constituting an unacceptable practice, are not entitled to a hearing, reason that section 504.5 applies in the case of initial and subsequent enrollments whereas section 504.7 is limited to termination of a provider’s continuing participation. This court, however, finds that this distinction lacks merit as a reenrollee is, in actuality, a continuing provider and thus, when charged with an unacceptable practice, it has a right to a hearing pursuant to section 504.7 (b) and 18 NYCRR part 515. To interpret section 504.5 as permitting termination without a hearing would render the section dealing with termination of continuing providers (§504.7) "ineffective and deprive it of meaning, contrary to the most fundamental principles of statutory construction” (Levinson v Perales, supra, at 27, col 3; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 96, 97, 98). All sections of a law, statute or regulation must be read together and harmonized with each other so as to give effect and meaning to the entire law and "every part and word thereof’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 98).
The court thus finds that the cases holding that an evidentiary hearing pursuant to 18 NYCRR part 515 must be afforded to a provider under such circumstances as are presented here, represent the better reasoned view. Therefore, since respondents failed to follow the procedure pursuant to part 515 for termination of a participating provider, respondents’ termination of petitioner’s enrollment as a Medicaid provider was arbitrary and capricious, an abuse of discretion, and in violation of lawful procedure. Thus, respondents’ determination may not stand (see, CPLR 7803 [3]; Matter of Pell v Board of Educ., 34 NY2d 222, 231).
Inasmuch as the court finds that respondents’ determination must be annulled for the foregoing reasons, it is unnecessary to reach petitioner’s remaining contentions including the constitutional due process arguments raised in support of the petition.
Accordingly, the petition is granted, without costs, to the extent of annulling respondents’ determination to terminate petitioner and directing that petitioner be reinstated as an authorized Medicaid provider until such time as it is removed by procedures conforming with law. Respondents’ cross motion to dismiss the petition is hereby denied.